**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

ADDIE HUNINGTON, o/b/o          :
LUTHER LEE HUNINGTON,
                                :
     Plaintiff,
                                :
vs.                                     CA 08-0688-WS-C
                                :
MICHAEL J. ASTRUE,
Commissioner of Social Security, :

     Defendant.


**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff brings this action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her deceased husband's claim for supplemental security income benefits. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel for the defendant at the July 1, 2009 hearing before the undersigned,[1] it is determined that the Commissioner's decision denying the

---

[1]     Plaintiff's counsel informed the undersigned's office that this hearing was mistakenly left off her calendar.

deceased plaintiff benefits should be affirmed.

Plaintiff alleges that prior to his death, her husband was disabled due to plantar faciitis and carpal tunnel syndrome. The Administrative Law Judge (ALJ) made the following relevant findings:

**2.      The claimant has the following severe impairment: plantar faciitis (20 CFR 416.920(c)).**

.          .          .

**4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with the following limitations. He can lift 20 pounds occasionally and 10 pounds frequently. He has no restrictions on sitting. He can stand/walk for 2 hours continuously, for 6-7 hours total. He can frequently stoop, kneel, crouch, and handle. He can constantly finger.**

.          .          .

**5.      The claimant is unable to perform any past relevant work (20 CFR 416.965).**

.          .          .

**6.      The claimant was born on August 25, 1953 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).**

**7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**8.      Transferability of job skills is not material to the**

**determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**

.     .      .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the Vocational Expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The Vocational Expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations. The examples given are as follows: . . . Sewing Machine Operator . . .[,] Parking Lot Attendant . . .[, and] Gate Guard[.] . . .

Pursuant to SSR 00-4p, the Vocational Expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the Vocational Expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment

to other work that exists in significant numbers in the national
economy. A finding of "not disabled" is therefore appropriate
under the framework of the above-cited rule.

**10.     The claimant has not been under a disability, as
defined in the Social Security Act, since May 19, 2005, the
date the application was filed (20 CFR 416.920(g)).**

(Tr. 21, 22, 25, 26 & 27 (footnote omitted; emphasis in original))  The Appeals

Council affirmed the ALJ's decision (Tr. 3-4A) and thus, the hearing decision

became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving

that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001

(11th Cir. 1986).  In evaluating whether the claimant has met this burden, the

examiner must consider the following four factors:  (1) objective medical facts

and clinical findings; (2) diagnoses of examining physicians; (3) evidence of

pain; and (4) the claimant's age, education and work history.  *Id.* at 1005.

Once the claimant meets this burden, as here, it becomes the Commissioner's

burden to prove that the claimant is capable, given his age, education and work

history, of engaging in another kind of substantial gainful employment which

exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th

Cir. 1985).

4

The task for the Court is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he could perform light unskilled work as a sewing machine operator, parking lot attendant, and gate guard during the relevant time period, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, plaintiff's sole contention is that the ALJ erred in failing to accord proper weight to the medical expert opinion of consultative examiner Dr. Namburu. Luther Hunington was examined by two consultative physicians. Prior to the administrative hearing, the claimant was examined by Dr. Namburu on August 8, 2005. (Tr. 116-117) Dr. Namburu's impression was carpal tunnel syndrome in the right wrist and osteophytes in both soles of the feet "making his feet really tender and hurt." (Tr. 117)

> All the joints range of motion within normal limits including the right wrist but complains of pain on flexion of the right wrist

and also, the patient complains of some tingling sensation running in the right wrist. On examination of the right wrist, there is tenderness on flexion of the right wrist as dictated above, but I did not notice any thenar atrophy on the right hand, and the left wrist is within normal limits. On examination of the feet bilaterally, there are some knots on . . . the soles of the [feet], questionable osteophytes. I do not have an extra finding for that, but tenderness definitely present over the knots and the knots are not smaller; they are big knots, very noticeable and very tender. That is why the patient complains that he is not able to walk unless and until he wears really soft shoes, and the pain goes away after taking the shoes off and getting his feet off from the floor. Muscle bulk in all the muscle groups within normal limits. The patient has good reflexes.

GAIT: Little bit trying to limp in both the legs because of the questionable osteophytes in both the soles, and the patient had good ability to sit in squatting position and to rise from squatting position. No motor loss noticed. Circumferential measurements of all the muscle groups within normal limits.

NEUROLOGICAL: All the muscle groups strength is 5/5 and strength stayed the same with resistance due to exercises. No deformity of any joint noticed. His MCP and PIP joints are pretty good and in normal condition with good flexion and extension. He has good ability to fist, 5/5 grip strength. Good ability to oppose the thumb to the other fingers. Good ability to button, tie shoelaces, pick up small objects, hold a glass and turn a doorknob without any problem. The patient does not use any assistive device or does not need any assistive device and motivation and effort on this patient. Definitely, the patient would like to go and do some job once his medical problems are taken care of.

(Tr. 116-117) Dr. Namburu was of the opinion that Hunington needed "some

help from the disability agencies to see a doctor" so that he could get his feet

6

worked on and further, that he needed "some disability to take care of these things[.]" (Tr. 117)[2]

Following the administrative hearing, plaintiff was evaluated by Dr. Huey Kidd on September 13, 2007. (Tr. 129-130) Dr. Kidd's impression was bilateral foot pain likely secondary to plantar faciitis and wrist pain. (Tr. 130)

> PHYSICAL EXAMINATION: . . . EXTREMITIES: No clubbing, cyanosis or edema. He has two large nodules on the plantar aspect of his right foot and one nodule on the plantar aspect of the left foot, appears to be deep to the skin and appears to be a contracture of the plantar fascia. NEURO: He has full range of motion and 5/5 strength of the upper extremity. He has full range of motion and 5/5 strength of the lower extremity. He is able to heel walk, able to toe walk. Able to bend and touch his toes. Able to squat and stand without difficulty. He ambulates with a cane in the left arm and he leans on it.

> X-ray of the right foot is normal except for hammer toes. X-ray of the right hand revealed mild osteoarthritic changes as does the left, only minimal arthritis. The left foot is also normal.

(Tr. 129) Dr. Kidd completed a physical medical source opinion and thereon indicated that Hunington could frequently lift and carry twenty (20) pounds and occasionally lift and carry fifty (50) pounds and that he could stand, walk

---

[2]    Hunington testified during the July 12, 2007 hearing that problems with his feet and wrists kept him from working. (Tr. 148) He testified that he spent most of his days watching television but that he could sometimes sweep, cook, do his laundry and go to the grocery store. (Tr. 149) According to the claimant, he could stand 30 to 45 minutes at one time, walk 2 to 3 blocks, and sit all day if "necessary." (Tr. 150) Hunington testified that he primarily used Motrin for the pain but sometimes used a friend's prescription Lortab. (Tr. 151)

and sit without limitation. (Tr. 131)

It is well-established in this circuit not only that the opinions of consultative examining physicians are entitled to be accorded weight by the ALJ, *compare  Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary.") *with Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. . . . 'The opinions of nonexamining, reviewing physicians, when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone, do not constitute substantial evidence.'"), but, as well, that the ALJ must state the weight "he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also McNamee v. Social Security Administration*, 164 Fed.Appx. 919, 2006 WL 227586, *3 (11th Cir. 2006) ("Finally, '[i]n assessing the medical evidence the ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor.'").

In this case, the ALJ clearly stated that he was according Dr. Kidd's

opinion great weight but, at the same time, was finding some limitations on plaintiff's ability to stand and walk not indicated by Dr. Kidd. (Tr. 22) While the ALJ did not explicitly state the weight he was according Dr. Namburu's medical opinions, he set those opinions out at length (Tr. 21) and, in the undersigned's opinion, the objective observations made by Dr. Namburu support the ALJ's determination that plaintiff was capable, on the date of the decision, of performing the physical requirements of a limited range of light work (*compare id. with* Tr. 22).

Residual functional capacity is a determination made by the ALJ "considering the claimant's ability to lift weight, sit, stand, push, pull, etc." *Sryock v. Heckler*, 764 F.2d 834, 836 n.2 (11th Cir. 1985); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) ("[T]he ALJ will 'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence', in the case."); *Hutchison v. Bowen*, 787 F.2d 1461, 1464 (11th Cir. 1986) ("The ALJ first ascertains a claimant's 'residual functional capacity,' which involves findings as to the claimant's ability to lift weight, sit, stand, push, and pull.'"); *see* 20 C.F.R. § 416.920(e) (2008) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based

9

on all the relevant medical and other evidence in your case record[.]").  The

undersigned finds in this case that the ALJ's RFC determination, that is, that

plaintiff could, at the time of the decision, lift 20 pounds occasionally and 10

pounds frequently, had no restrictions on sitting or fingering, could frequently

stoop, kneel, crouch and handle, and could stand/walk for two hours

continuously and for 6 to 7 hours total (Tr. 22),[3] is supported by substantial

evidence in the record. This RFC determination is supported not only by Dr.

Huey Kidd's physical medical source opinion, which established that plaintiff

could perform medium work (Tr. 131-133), *cf.* 20 C.F.R. § 416.967(c) ("If

someone can do medium work, we determine that he or she can also do

sedentary and light work."),[4] but as well by the objective findings of both Dr.

Kidd (Tr. 129 ("No clubbing, cyanosis or edema. He has two large nodules on

the plantar aspect of his right foot and one nodule on the plantar aspect of the

left foot, appears to be deep to the skin and appears to be a contracture of the

plantar fascia. NEURO: He has full range of motion and 5/5 strength of the

---

[3]        "Light work involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be
very little, a job is in this category when it requires a good deal of walking or standing, or when
it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20
C.F.R. § 416.967(b) (2008).

[4]        Therefore, a finding by the ALJ that plaintiff can perform a limited range of light
work is certainly not inconsistent with Dr. Kidd's physical medical source opinion.

upper extremity. He has full range of motion and 5/5 strength of the lower extremity. He is able to heel walk, able to toe walk. Able to bend and touch his toes. Able to squat and stand without difficulty. . . . X-ray of the right foot is normal except for hammer toes. X-ray of the right hand revealed mild osteoarthritic changes as does the left, only minimal arthritis. The left foot is also normal.")) and Dr. Namburu (Tr. 116 ("All the joints range of motion within normal limits including the right wrist but complains of pain on flexion of the right wrist and also, the patient complains of some tingling sensation running in the right wrist. On examination of the right wrist, there is tenderness on flexion of the right wrist as dictated above, but I did not notice any thenar atrophy on the right hand, and the left wrist is within normal limits. On examination of the feet bilaterally, there are some knots on . . . the soles of the [feet], questionable osteophytes. I do not have an extra finding for that, but tenderness definitely present over the knots and the knots are not smaller; they are big knots, very noticeable and very tender. That is why the patient complains that he is not able to walk unless and until he wears really soft shoes, and the pain goes away after taking the shoes off and getting his feet off from the floor. Muscle bulk in all the muscle groups within normal limits. The patient has good reflexes. GAIT: Little bit trying to limp in both the legs

11

because of the questionable osteophytes in both the soles, and the patient had good ability to sit in squatting position and to rise from squatting position. No motor loss noticed. Circumferential measurements of all the muscle groups within normal limits. NEUROLOGICAL: All the muscle groups strength is 5/5 and strength stayed the same with resistance due to exercises. No deformity of any joint noticed. His MCP and PIP joints are pretty good and in normal condition with good flexion and extension. He has good ability to fist, 5/5 grip strength. Good ability to oppose the thumb to the other fingers. Good ability to button, tie shoelaces, pick up small objects, hold a glass and turn a doorknob without any problem.")) and plaintiff's own testimony during the administrative hearing that he has no limitations on his ability to sit (Tr. 150 ("How long are you able to sit? [] All day, if it's necessary.")). Because substantial evidence of record supports the ALJ's RFC determination, and the vocational expert identified light jobs in significant numbers in the national economy which plaintiff could perform, *see Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (VE's testimony that 174 small appliance positions existed in the area where claimant resided was substantial evidence supporting the Secretary's fifth-step denial of benefits), the ALJ's fifth-step determination is due to be affirmed.

## CONCLUSION

It is recommended that the Commissioner's decision denying plaintiff benefits be affirmed.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 13th day of July, 2009.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

13

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.       *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.